## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE-OPELOUSAS DIVISION

LEROY PESSON                                    CIVIL ACTION NO. 05-0986

VS.                                             MAGISTRATE JUDGE METHVIN
                                                BY CONSENT OF THE PARTIES

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION

### MEMORANDUM RULING

Before the court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable law, the court

concludes that there is not substantial evidence to support the ALJ's finding.  Accordingly, the

Commissioner's decision is **REVERSED**.

*Background*

Born on April 17, 1939, Leroy Pesson ("Pesson") is currently 67 years old.  Pesson

obtained a General Equivalency Diploma and has worked in the past as an oilfield mechanic and

mechanic's supervisor.  On December 6, 1999, Pesson applied for Title II disability benefits

effective January 1, 1986, due to problems with his ears, asthma, dizziness, and high blood

pressure.[1]  Pesson's application was denied on initial review, and an administrative hearing was

held on July 25, 2001.[2]  In an opinion dated November 27, 2001, the ALJ denied benefits on

grounds that Pesson retained the capacity to perform medium work, and therefore, he was not

---

[1] Tr. 65.

[2] Tr. 289-311.

disabled.[3]  On April 5, 2005, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner from which Pesson now appeals.

### *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards.  Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991).  The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion.  Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

### *ALJ's Findings*

The ALJ determined that Pesson's asthma, vertigo, hypertension, mild to moderate high frequency hearing loss, and swelling of both lower extremities were severe.[4]  Although Pesson can not perform his past work, the ALJ concluded that Pesson can perform medium level work.

---

[3] Tr. 16-25.

[4] Tr. 20.

Applying the Medical Vocational Guidelines, the ALJ concluded that Pesson was not disabled.

### *Assignment of Errors*

Pesson alleges that the ALJ erred in the following respects: 1) in failing to consider all of Pesson's impairments, and to find them severe at Steps 2 through 4 of the evaluation process; 2) in his application of the Medical-Vocational Guidelines; and 3) in failing to obtain vocational expert testimony.

### *Findings and Conclusions*

After a review of the entire record and the briefs of the parties, and pursuant to 42 U.S.C. § 405(g), the court concludes that the ALJ's findings and conclusions are not supported by substantial evidence in the record.

### Administrative Record

On January 14, 1986, Pesson underwent left heart catheterization after he had atypical chest pain and an abnormal stress test.[5]  The catheterization showed normal heart function, indicating a false positive stress.

On April 11, 1986, Pesson was examined by Dr. Joseph Murray, Jr., an internist, for complaints of hypertension for eight years and dizzy spells for seven years.[6]  Pesson measured 6'1 ½" and weighed 267 pounds.[7]  Dr. Murray diagnosed Pesson with "severe essential hypertension, poorly controlled," vertigo, and obesity.  Dr. Murray changed the medication

---

[5] Tr. 94.

[6] Tr. 128-130.

[7] Tr. 127.

Pesson had been taking. On May 7, 1986, Pesson advised Dr. Murray that the dizziness was better, but he was experiencing short term memory loss.[8]

In July, 1986, Pesson began treatment with Dr. Kenneth Nix, internist.[9] Dr. Nix confirmed that Pesson had severe essential hypertension, dizziness, etiology unclear, obesity, and atypical chest pain.[10] Dr. Nix continued Pesson on the medication he was already prescribed. In August, 1986, Pesson told Dr. Nix that he "didn't feel like [himself] anymore."[11]

On October 21, 1986, Pesson was examined by Wilson Luy Tan for chronic dizziness and hypertension.[12] Dr. Tan recommended that Pesson have cerumen (ear wax) removed to help relieve the disequilibrium.[13] On October 28, 1986, Pesson reported that the dizziness had improved after the cerumen removal. In November, 1986, however Pesson continued to experience dizziness, and Dr. Tan noted that he had discussed the advisability of Pesson returning to work, however, Pesson insisted the he could not perform his regular job.[14]

On December 5, 1986, Pesson indicated that he continued to experience dizziness and his legs were swelling.[15] Dr. Nix increased his medication dosage. On March 25, 1987, Dr. Nix

---

[8] Tr. 127. In May, 1986, Pesson wrecked his boat and fractured his left proximal fibula. On June 26, 1986, Dr. Hugh Larrivierie noted that the fracture was healing well. Tr. 125.

[9] Tr. 116.

[10] Tr. 117.

[11] Tr. 115.

[12] Tr. 122.

[13] Tr. 122.

[14] Tr.. 118-119.

[15] Tr. 112.

noted, "some spells of dizziness . . . but generally doing very well."[16]  On June 16, 1987,

Dr. Nix's records state, "Feels good, still having dizzy spells."[17]  On November 10, 1987, Dr. Nix

noted that Pesson's condition was status quo over the past year and that his symptoms may be on

a "psychological basis."[18]

On October 4, 1988, Pesson was examined by Dr. Nix for complaints of chest pain and

continued dizziness.[19]  On January 20, 1989, Pesson did not complain of chest pain or dizziness

and Dr. Nix noted that Pesson was doing well.[20]

In January and February 1990, Pesson was examined by Dr. Rick Matis for asthma.[21]  On

March 28, 1990, Pesson was examined by Ernest Wong with the chief complaint of "shortness of

breath with minimal exertion."[22]  Dr. Wong noted that Pesson stated that he had the flu in

January and had coughing, lung congestion, and shortness of breath ever since.  Pesson's lungs

were clear and he had minimal wheezing with forced expiration.  Dr. Wong began treating

Pesson "as though he has asthma, which I think he does by all likelihood."[23]  Dr. Wong

prescribed Vanceril for the asthma.  On October 22, 1990, Dr. Wong noted, "Mr. Pesson stopped

---

[16] Tr. 108.

[17] Tr. 108.

[18] Tr. 105.

[19] Tr. 104.

[20] Tr, 102.

[21] Tr. 99.

[22] Tr. 143.

[23] Tr. 144.

the Vanceril as it caused his mouth to break out in sores. Of course, he is still chewing tobacco."[24] Dr. Wong instructed Pesson to begin using the medication again and to "gargle rigorously after using the Vanceril, as his chewing tobacco certainly will damage the oral mucosa and make him more likely to develop complications."[25]

On April 2, 1991, Dr. Wong noted that Pesson was having frequent asthma flare-ups, he felt dizzy, short of breath, and is producing a lot of mucus.[26] Pesson advised that he felt well while he was using Prednisone and he stopped taking his other medications. He was not using Vanceril regularly. Dr. Wong advised Pesson to begin taking his medication again, including regular use of Vanceril. On May 7, 1991, Dr. Wong increased Pesson medication dosage in an attempt to better control the asthmatic attacks.[27]

On April 23, 1991, Pesson was examined by Dr. Bradley Chastant for dizziness and headaches.[28] On April 23, 1991, an electronystagmograph showed that Pesson had a left peripheral vestibular lesion.[29] Pesson was also diagnosed with high frequency hearing loss.

---

[24] Tr. 138.

[25] Tr. 138.

[26] Tr. 136.

[27] Tr. 135.

[28] Tr. 162.

[29] Tr. 156. An electronystagmograph tests the balance system. Electrodes record eye movements as warm and cool water or air are gently introduced into each ear canal. "Since the eyes and ears work in a coordinated manner through the nervous system, measurement of eye movements can be used to test the balance system." *See* http://www.entcolumbia.org/meniere.htm A peripheral vestibular lesion affects nerves in the ear, in the labyrinth or the 8th nerve including the root's entry zone in the brain stem. Patients with an acute peripheral vestibular lesion typically can stand, although they will veer toward the side of the lesion. *See* http://www.medical-journals.com/r03vn.htm

The record does not include any other information regarding Pesson's treatment during the applicable period.  It is noteworthy, however, that on April 30, 1999, after Pesson's insured status had expired, he underwent open heart surgery for valve replacement.[30]

At the administrative hearing held on July 25, 2001, Pesson testified that in 1986, he failed an employment physical because of dizziness and a heart murmur.[31]  After he stopped working in 1986, Pesson spent his days training his dogs and cutting his grass.[32]  He also liked to hunt and fish.  In 1993, however, Pesson stopped cutting grass, hunting, and fishing.[33]  Pesson testified that his legs swell if he is on his feet for a long time and he has experienced this his whole life, including while he was working.[34]  Pesson has also had asthma his entire life.[35]  Pesson testified that in 1986 his weight was about 240.[36]  His dizziness improved after heart surgery in 1999.

**Severity Finding**

Pesson maintains that the ALJ erred by omitting three of Pesson's alleged impairments from his discussion on severity, in violation of Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985).  Pesson contends that his obesity, severe essential hypertension, and left peripheral vestibular lesion are all severe impairments.

---

[30] Tr. 172.

[31] Tr. 297.

[32] Tr. 299.

[33] Tr. 299.

[34] Tr. 300.

[35] Tr. 301.

[36] Tr. 293.

The Fifth Circuit uses the following standard in determining whether a claimant's impairment is severe: "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." Stone v. Heckler, *supra*, citing Estran v. Heckler, 745 F.2d 340, 341 (5th Cir.1984). *See also* Brady v. Heckler, 724 F.2d 914, 920 (11th Cir.1984); Martin v. Heckler, 748 F.2d 1027, 1032 (5th Cir.1984); Davis v. Heckler, 748 F.2d 293, 296 (5th Cir.1984). If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability. 20 C.F.R. §§ 404.1530, 416.930; Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir.1987).

In the instant case, the ALJ concluded that Pesson suffered from the following severe impairments: asthma, vertigo, hypertension, mild to moderate high frequency hearing loss, and swelling of both lower extremities.[37] The ALJ also analyzed the medical evidence relating to the other impairments complained of by Pesson: obesity[38], severe essential hypertension[39], and left peripheral vestibular lesion[40]. Although it is true that the ALJ did not list the latter three impairment separately in his "list of severe impairments," it is clear that he considered them and found them to be severe under the Stone standard. The three "omitted" impairments posed the same limitations as the impairments found to be severe – leg swelling, shortness of breath, and

---

[37] Tr. 20.

[38] Pesson did not identify specific limitations caused by his obesity, however, the ALJ's analysis included shortness of breath and leg swelling, which are common symptoms.

[39] Essential hypertension refers to high blood pressure with no identifiable cause. *See* http://www.nlm.nih.gov/medlineplus/ency/article/000153.htm

[40] The vestibular system is the sensory apparatus of the inner ear that helps the body maintain its postural equilibrium. http://www.britannica.com/eb/article-65062.

dizziness/balance problems. Since the ALJ's severity analysis included impairments that posed the same functional limitations, he was not required to list other similar impairments.

Moreover, the ALJ did not stop the disability analysis at Step 2, which would have been the case if he had found that Pesson did not have a severe impairment. Instead the ALJ addressed the medical evidence and the effect all of the impairments had on Pesson's ability to work. Because the Fifth Circuit has already declined to extend the <u>Stone</u> decision to cases that were not decided at Step 2 on the basis of non-severity, Pesson's contention has no merit. <u>See, e.g.</u>, <u>Jones v. Bowen</u>, 829 F.2d 524, 527 (5th Cir. 1987) (where ALJ concluded that appellant's hypertension was of "mild medical severity," and proceeded through the sequential evaluation to conclude at the fourth and fifth steps that the appellant could perform past relevant work and a full range of light work, the court held that the ALJ did not apply an incorrect severity standard at Step 2).

**<u>Application of the Guidelines</u>**

After concluding that Pesson could perform the full range of medium work, the ALJ applied the Medical Vocational Guidelines and concluded that Pesson was not disabled. Pesson maintains that because he suffers from non-exertional impairments which significantly affect his residual functional capacity, including dizziness, shortness of breath, hearing loss, and chest pains, the ALJ was precluded from relying on the Guidelines. Pesson argues that the ALJ therefore erred in failing to obtain the testimony of a vocational expert in determining whether he was disabled..[41]

---

[41]  Pesson alternatively argues that had the ALJ should have found that he retained the residual functional capacity to perform light work, in which case the Guidelines would have dictated a finding that he was disabled. Since the undersigned concludes that the record does not contain sufficient information regarding Pesson's residual functional capacity, and therefore

The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity.  <u>Perez v. Heckler</u>,  777 F.2d 298, 302 (5th Cir. 1985).  Here, the ALJ found that Pesson's asthma, dizziness, and leg swelling were not completely disabling because Pesson had worked with these problems in the past, and his daily activities showed that he could perform some work with these limitations.  However, the ALJ did not consider these impairments in combination with Pesson's other impairments, nor did he discuss how these impairments affected Pesson's ability to work.  As noted, the ALJ concluded that Pesson could perform the *full range* of medium work.  The ALJ failed to explain why Pesson's recurrent dizziness, asthma, and leg swelling would not impose some limitations on Pesson's functional capacity to perform, for example, jobs that require balancing, working at heights, or driving machinery, and jobs which involve exposure to dust or fumes.

Further, the ALJ erred as a matter of law in his application of the Medical-Vocational Guidelines.  The guidelines were established to allow the ALJ take administrative notice of the existence of jobs in the national economy when a claimant's residual functional capacity, age, education and previous work experience meet certain specified criteria.  When such criteria are met, the ALJ need not call a vocational expert.  Use of the guidelines in appropriate cases has been approved by the United States Supreme Court.  <u>Heckler v. Campbell</u>, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); <u>Jones v. Heckler</u>, 702 F.2d 616, 622 (5th Cir. 1983).  The guidelines cannot be used, however, when the claimant suffers from non-exertional impairments which significantly affect the claimant's residual functional capacity.  <u>Martin v. Heckler</u>, 748 F.2d 1027 (5th Cir.1984).

---

remand is required, the argument that Pesson has the capacity to perform light work is not addressed herein.

Title 20 C.F.R. Chapter III, Subpart P, Appendix 2, 200.00(e) states as follows:

Since the rules are predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs, they may not be fully applicable where the nature of an individual's impairment does not result in such limitations, e.g., certain mental, sensory, or skin impairments. In addition, some impairments may result solely in postural and manipulative limitations or environmental restrictions. Environmental restrictions are those restrictions which result in inability to tolerate some physical feature(s) of work settings that occur in certain industries or types of work, e.g., and inability to tolerate dust or fumes.

Here, the ALJ failed to consider Pesson's non-exertional impairments in determining his residual functional capacity; specifically, Pesson's hearing loss, dizziness, leg swelling, and shortness of breath. Because the medical record is clear that Pesson suffers from non-exertional limitations, it was error for the ALJ to apply the guidelines. He was obliged under the circumstances to obtain the testimony of a vocational expert to determine whether Pesson was capable of performing work in the economy.

Accordingly, the undersigned finds no substantial evidence in the record supporting the ALJ's conclusion that Pesson can perform the full range of medium work. The ALJ failed to assess the specific limitations posed by Pesson's impairments. Further, the ALJ committed legal error in relying upon the Medical-Vocational guidelines instead of consulting a vocational expert to determine whether the limitations occasioned by Pesson's impairments affect his ability to perform work in the regional and/or national economy.

A review of the Medical-Vocational guidelines shows that someone of advanced age, as Pesson was when he turned 55 years old on April 17, 1994, with a GED, and who had similar skills as Pesson, would be found disabled at all residual functional levels except the full range of

medium work.[42]  As discussed above, the record is clear that Pesson is unable to perform the full range of medium work due to his exertional and non-exertional limitations.  It is therefore not necessary to remand the case to the Commissioner, because the Medical-Vocational guidelines establish that Pesson was disabled when he turned 55 years old on April 17, 1994.  *See* <u>Ferguson v. Schweiker</u>, 641 F.2d 243, 250, n. 8 (5th Cir.1981) (Remand is appropriate only upon a showing of "good cause," which includes an "inability to make a definitive ruling concerning a claimant's disability based on the record before the court.").

For the foregoing reasons, the decision of the ALJ shall be reversed, and Pesson shall be awarded disability benefits consistent with an onset date of April 17, 1994.

Signed in chambers on June 27, 2006.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)

---

[42] Prior to attaining advanced age, the Medical Vocational guidelines provide that Pesson was not disabled.